UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHRISTOPHER NOBLE,**

    **Plaintiff,**

    v.

**THE YOUNG MEN'S CHRISTIAN ASSOCIATION OF CENTRAL OHIO,** *et al.*,

    **Defendants.**

**Case No. 2:19-cv-5094**
**Judge Edmund A. Sargus, Jr.**
**Magistrate Judge Chelsey M. Vascura**

## OPINION AND ORDER

This matter is before the Court on Defendants', Columbus Board of Education (the "Board"), Columbus City Schools, and Cythia Ball ("Ball" or "Principal Ball") (Collectively "Defendants"), Motion for Judgement on the Pleadings. (ECF No. 41). Plaintiff has responded in opposition, (ECF No. 44), to which Defendants have replied. (ECF No. 45). For the reasons stated below, the Motion, (ECF No. 41), is **GRANTED in part** and **DENIED in part**.

**I. Statement of Facts**

It was the summer of 1998. Plaintiff was eight years old. (Compl. at ¶ 17). At the time Plaintiff was a student at Fair Alternative Elementary School, and he was participating in various classes, summer programs, camps and field trips. (*Id.*). These events were part of a program called "YEAR 2000", which was put on and sponsored by all Defendants in this case. (*Id.* at ¶ 18).

Defendant Ralph Bowman ("Bowman") was either a teacher or aide with responsibility for children. (*Id.*). "He had grooming and/or recruiting propensities that were known to all Defendants." (*Id.*). "In other words, all Defendants knew he would get close to young children in

1

inappropriate or questionable ways." (*Id.*). The Board "had a custom and/or practice of not investigating and/or hiding grooming behaviors of their employees[,]" (*Id.* at ¶ 4), as did the principal, Cynthia Ball. (*Id.* at ¶ 6). Ball in particular "protected Bowman." (*Id.*).

On July 24, 1998, Plaintiff and the other children were scheduled to visit a library near Fair Alternative Elementary. (*Id.* at ¶ 20). However, Bowman stopped Plaintiff and instead brought Plaintiff to his elementary-school office for snacks. (*Id.* at ¶ 21). From there Bowman took Plaintiff to his house across the street and raped him. (*Id.* at ¶ 22). Bowman then returned Plaintiff to the school. (*Id.*). Upon being reunited with his parents later that day, Plaintiff told them what had happened and he was taken to the hospital. (*Id.* at ¶ 23). "A police report was also made that same day." (*Id.*).

Plaintiff alleges that at best, Ball and the Board were willfully ignorant of Bowman raping Plaintiff, and at worst, they not only knew what was happening, they gave it their consent. (*Id.* at ¶ 22). None of the Defendants made their own reports to the authorities, (*Id.* at ¶ 24), and no full investigation was ever conducted by Columbus City Schools or the Board. (*Id.* at ¶ 26).

## II. Procedural Background

On October 17, 2019, Plaintiff filed suit against The Young Men's Christian Association of Central Ohio (the "YMCA"), Ralph Bowman, the Columbus Board of Education, Columbus City Schools, Cynthia Ball, John Bickley,[1] and Visions Unlimited Academy.[2] (Compl. at 1–2, ECF No. 2). Plaintiff's Complaint includes seven claims against the various Defendants. In Count I, Plaintiff accuses "[a]ll Defendants" of "childhood sexual abuse." (*Id.* at ¶ 32). Plaintiff also accuses all Defendants of negligent hiring, retention, and supervision (Count II); intentional infliction of

---

[1] John Bickley was the CEO of the YMCA in 1998. (*Id.* at ¶ 7).
[2] Visions Unlimited Academy was an Ohio non-profit corporation that employed Bowman and helped to put on the various events during the summer of 1998. (*Id.* at ¶ 8).

emotional distress (Count III); negligence (Count V); negligence per se (Count VI); and the violation of due process (Count VII). (Compl. at 11–14, 16–18, ECF No. 2). Plaintiff further accuses Columbus City Schools and the Board of violating Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688, ("Title IX") (Count IV). (*Id* at 15). Defendants removed the case to this Court on November 19, 2019. (ECF No. 1). Then, On September 8, 2020, Columbus City Schools, the Board, and Cynthia Ball moved for judgement on the pleadings. (ECF No. 41). That motion is now ripe for review.

### III. Statement of Law

The Federal Rules of Civil Procedure provide that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review for a Rule 12(c) motion for judgment on the pleadings is identical to the standard for a motion to dismiss under Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). To state a claim upon which relief may be granted, Plaintiffs must satisfy the pleading requirements set forth in Rule 8(a). Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," and in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 677–79 (quoting *Twombly*, 550 U.S. at 555) (internal quotations

3

omitted). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678–79.

### IV. Analysis

Defendants submit that they are entitled to judgement on the pleadings on all Counts, and that this Court should dismiss Plaintiff's Complaint against them in its entirety. They argue that (A) Columbus City Schools is not capable of being sued, (B) the Complaint is insufficiently pleaded, and (C) the Board and Ms. Ball are immune to the claims Plaintiff raises against them. Defendants also posit that as a matter of law Plaintiff cannot recover punitive damages.

#### A. Columbus City Schools

Defendants argue that as a school district, Columbus City Schools is not *sui juris*. (Mot. at 3, ECF No. 41). This Court has consistently held that "under Ohio law, a school district does not exist and is not *sui juris*." *Estate of Olsen v. Fairfield City Sch. Dist. Bd. of Educ.*, 341 F. Supp.3d 793, 799 (S.D. Ohio Sept. 21, 2018) (internal citations omitted). "Instead, it is the board of education of the school district that is the body politic and corporate which is capable of suing and being sued." *Id.* (citing O.R.C. § 3313.17); *see also Thompson v. Bd. of Educ.*, No. 3:12-cv-287, 2013 WL 6001626, at *3 (S.D. Ohio Nov. 12, 2013). Plaintiff has sued Columbus City Schools and the Columbus Board of Education. The Board, not the school district itself, is the proper party capable of being sued. *E.g.*, *Estate of Olsen*, 341 F. Supp. 3d at 799.

#### B. Sufficiency of the Pleadings

Defendants next submit that Plaintiff has alleged legal conclusions that are unsupported by specific factual allegation. (Mot. at 6, ECF No. 41). Defendants first make this argument generally, and then they direct it to various Counts of the Complaint. (*See id.* at 6–11, 13, 15). The argument

4

is raised against Count II, IV, V, and VI. (Mot. at 7, 9, 10, ECF No. 41). It is also raised against Count VII, but in a manner that is often tied up with the issue of immunity, and so that argument will be addressed further below during the discussion on immunity.

### 1. Negligent Hiring, Retention, and Supervision

Defendants assert that Count II, negligent hiring, retention, and supervision, should be dismissed against the Board. (Mot. at 7, ECF No. 41). This claim has five elements: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injury." *Linder v. Am. Nat'l Ins. Co.*, 798 N.E.2d 1190, 1197 (Ohio App. Ct. 2003); *see also Zanni v. Stelzer*, 880 N.E.2d 967, 969 (Ohio App. Ct. 2007). Defendants argue that Plaintiff failed to sufficiently plead the first element against the Board, and the third element against all Defendants. (Mot. at 7, ECF No. 41).

On numerous occasions Plaintiff alleges that the Board employed Bowman during the relevant time period, thus satisfying the first element—an employment relationship. (Compl. at ¶¶ 3, 4, 9, 18, 35). For example, Plaintiff alleges that he was attending a summer program operated by the Defendants "at which Bowman was a teacher and/or aide . . . ." (Compl. at ¶ 18). This allegation is further bolstered by the allegation that Bowman took Plaintiff to his office at the elementary school. (*Id.* at ¶ 21). Defendants argue that Bowman could not have been an employee because it was summertime, but that argument is premature. At this stage in the proceedings the Court accepts the allegations of an employment relationship as true.

Plaintiff has also sufficiently pleaded the third element of his negligent hiring, retention, and supervision claim—actual or constructive knowledge of Bowman's incompetence. Plaintiff

5

alleged that Bowman "had grooming and/or recruiting propensities that were known to all Defendants," and that Defendants knew Bowman would "get close to young children in inappropriate or questionable ways." (Compl. at ¶ 18). Accepting as true that Defendants knew about this behavior, the Court can infer that Defendants had at least constructive knowledge that Bowman posed a danger of child sexual-abuse and was thus incompetent for employment working with children.

While Defendant observes that Plaintiff has not pointed to any "specific 'facts'" to support this claim, (Reply at 4, ECF No. 45), Plaintiff's Complaint is not required to allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (quotation omitted). Plaintiff's Complaint need only give Defendants "fair notice of what the … claim[s] [are] and the grounds upon which [they] rest[]." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). The Court has reviewed the Complaint and concludes that the allegations therein are sufficient. And while the allegations are sufficient regardless, it is notable that the incident occurred over two decades ago and Plaintiff was only eight years old at the time. Requiring any greater specificity than this would effectively close the doors to the courthouse on not just Plaintiff, but many who are similarly situated.

   2. **Title IX**

Defendants next challenge the sufficiency of Plaintiff's pleading that the Board violated Title IX. The statute provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C.S. § 1681(a) (LexisNexis 1998). It is well established that the sexual abuse of a student by a teacher is a form of discrimination on the basis of sex. *Franklin v. Gwinnett Cty. Pub. Schs.*, 503 U.S. 60, 75 (1992).

To be entitled to damages, a plaintiff must show that (1) an official with authority to take corrective actions had "actual knowledge" of the discrimination but failed to adequately respond, and (2) the response amounted to "deliberate indifference to discrimination." *Gebser v. Lago Vista Independent Sch. Dist.*, 524 U.S. 274, 290 (1998). Defendants challenge the sufficiency of Plaintiff's Complaint with respect to the first element, actual knowledge. (Mot. at 9, ECF No. 41).

Plaintiff alleged that when Bowman raped him, "[t]his was either known to the other Defendants and they failed to do anything about it, consented to it and/or they were willfully ignorant of this." (Compl. at ¶ 22, ECF No. 2). Viewed in the light most favorable to the Plaintiff, this is an allegation of not only knowledge, but consent on the part of the Board. That allegation satisfies the element of actual knowledge.

### 3. Negligence

Defendants posit that Plaintiff has not sufficiently pleaded his negligence claim (Count V). However, Defendants themselves devote only one paragraph to addressing this claim. (Mot. at 10, ECF No. 41). In that paragraph Defendants attempt to incorporate their prior arguments by reference, but the closest any of Defendants' prior arguments come to addressing Count V is their argument with respect to Count II, negligent hiring, retention, and supervision, which this Court rejected. Defendants have not otherwise put flesh to the bones of their Count V argument, and this Court will not do so for them. *See Brenay v. Schartow*, 709 Fed. App'x. 331, 337 (6th Cir. 2017) ("Our system is an adversarial one, and it is up to the parties to spar with each other on each and every issue."). Defendants' argument is not well taken.

### 4. Negligence Per Se

Defendants next argue that Plaintiff's claim of negligence per se (Count VI) is insufficiently pleaded. Defendants raise this argument with respect to the Board and Ball, but, as will be elaborated upon in more detail below, the Board has immunity on this claim. This Court will therefore analyze the sufficiency of Count VI here with respect to Ball only.

Plaintiff points to Ohio's child abuse reporting statute, Ohio Revised Code § 2151.421, as the basis for his claim that Ball is liable for negligence per se. (Compl. at ¶ 77, ECF No. 2). That statute provides that no school employee or school authority who "knows or suspects that a child . . . has suffered or faces a threat of suffering any physical or mental . . . injury . . . that reasonably indicates abuse or neglect of the child, shall fail to immediately report that knowledge or suspicion . . . ." Ohio Rev. Code Ann. § 2151.421(A) (LexisNexis 1998). Defendants argue that Plaintiff has not alleged that Ball knew or suspected Plaintiff was at risk of abuse from Bowman, but this Court has already found that Plaintiff sufficiently alleged Defendants, including Ball, knew of the abuse. (*See* Compl. at ¶¶ 6, 22, ECF No. 2). Defendants also appear to argue that Ball cannot be held liable under the statute because a police report was made on the day Plaintiff was raped. (*See* Mot. at 11, ECF No. 41).

If one person reports her suspicions of child abuse, she has satisfied her own duty, but she has not also satisfied the duty of every other person with knowledge of the abuse. Though Plaintiff alleges that a police report was filed, he also alleges that Ball was not involved with the filing of that or any report. (Compl. at ¶¶ 23–24, ECF No. 2). The statute imposes the duty on an individual basis. It does not expressly include an exception where an unassociated person has already reported that person's knowledge or suspicion of the abuse. Defendants have not explained why the filing of a police report by an unassociated person would relieve Ball of her own duty to report her own

8

knowledge of the abuse. Accordingly, the Court is unconvinced that Ball is entitled to dismissal of Count VI against her.

### C. Immunity & Count VII against the Board

Defendants raise a number of immunity defenses against Plaintiff's claims. Defendants argue that the Board is entitled to political subdivision immunity against four of Plaintiff's state-law claims, (Counts II, III, V, and VI), and that Ball is entitled to political subdivision immunity against two of those claims (Count III and V). Regarding Plaintiff's claim under 42 U.S.C. § 1983, (Count VII), Defendants argue that Ball is entitled to qualified immunity. Defendants also argue that the Board cannot be held liable on Count VII, and though that assertion does not involve immunity, the Court will address it in this section to avoid scattering the discussion of § 1983.

#### 1. Political Subdivision Immunity and the Board

Defendants assert that the Board is protected by political subdivision immunity. Under Ohio law, application of political subdivision immunity requires a three-tiered analysis. *Colbert v. Cleveland*, 790 N.E.2d 781, 783 (Ohio 2003). At tier one, courts determine if the political subdivision was performing governmental or property functions, in which case immunity attaches. *Id.*; Ohio Rev. Code Ann. § 2744.02(A)(1) (LexisNexis 1998). If immunity attaches, then at tier two, courts determine whether any of the five exceptions to immunity listed in § 2744.02(B) apply. *Colbert*, 790 N.E.2d at 783. If any of the exceptions apply, then courts move to tier three and examine § 2744.03, which may yet provide the political subdivision with a defense against liability. *Id.*

The parties do not dispute that the Board is a political subdivision, and Plaintiff asserts that the YEAR 2000 program was a proprietary function. (Resp. at 14, ECF No. 44). Thus, by Plaintiff's own terms tier one is satisfied, immunity attaches, and the analysis turns to tier two—

the exceptions to immunity. Defendants make no arguments with respect to tier three, so the Court will not proceed beyond tier two of the analysis. (*See, e.g.*, Mot. at 8, ECF No. 41).

### a. Count II and V

First, Defendants assert that the Board has political subdivision immunity against Counts II and V—negligent hiring, retention, and supervision; and negligence—because these claims do not fit into any of the five exceptions to immunity. (Mot. at 7–8, 10, ECF No. 41). Defendants do not further elaborate. (*See id.*). Plaintiff responds that he is not required to affirmatively demonstrate an absence of immunity at this stage in the proceedings because judgement on the pleadings should be denied so long as the complaint does not clearly establish immunity. (Resp. at 13–14, 19, ECF No. 44). He further asserts that he has alleged facts supporting an absence of immunity. (*Id.* at 14). In reply, Defendants assert Plaintiff's complaint does clearly establish immunity. (*See* Reply at 4, ECF No. 45). According to Defendants, the facts that Plaintiff has alleged are no more than labels and legal conclusions devoid of reference to any specific acts. (*Id.*).

At this point in the proceedings, this Court cannot say as a matter of law that the Board is entitled to political subdivision immunity on Counts II or V. Defendants have asserted that none of the exceptions to immunity apply, but they have not supported that assertion with an explanation. Instead, Defendants revamped their insufficiency argument. (*See Reply* at 4, ECF No. 45). Yet the second exception to political subdivision immunity may apply. That exception provides that a political subdivision may be held liable for the negligence of its employees when they are carrying out the "proprietary functions" of the political subdivision. Ohio Rev. Code Ann. § 2744.02(B)(2) (LexisNexis 1998). Defendants have not explained in their motion why the summer program should not be viewed as proprietary, nor have they even asserted that it was instead governmental. Therefore, dismissal is not warranted.

### b. Count III

Next, Defendants assert that the Board has political subdivision immunity against Count III, intentional infliction of emotional distress, because political subdivisions are immune from intentional tort claims. (Mot. at 8, ECF No. 41). Plaintiff responds that he has pleaded numerous exceptions, such as the exceptions stated in §§ 2744.02(B)(2) and (B)(5). (Resp. at 17, ECF No. 44). However, the first four exceptions to political subdivision immunity do not apply to intentional torts. The fifth exception also does not apply because in 1998, Ohio's child abuse reporting statute did not yet expressly impose liability for failure to report such abuse.

Ohio courts consistently interpret §§ 2744.02(B)(1)–(4) to apply only to negligence claims and not claims of intentional torts. *See, e.g.*, *Thornton v. City of Cleveland*, 176 Ohio App. 3d 122, 126 (Ohio Ct. App. 2008). This interpretation grew out of *Wilson v. Stark County Department of Human Services*, where the Ohio Supreme Court observed that "[t]here are no exceptions to immunity for the intentional torts of fraud and intentional infliction of emotion distress as alleged in this case." 639 N.E.2d 105, 107 (Ohio 1994). Ever since, appellate courts across Ohio have consistently concluded that political subdivisions are immune from intentional tort claims. *E.g.*, *Featherstone v. City of Columbus*, 2006-Ohio-3150, ₱ 11 (Ohio Ct. App. 2006). The Ohio Supreme Court later elaborated that "[u]nlike sections R.C. 2744.02(B)(1) through (4), R.C. 2744.02(B)(5) is *not* limited to negligent actions." *Cramer v. Auglaize Acres*, 865 N.E.2d 9, 14 (Ohio 2007) (emphasis added). Therefore, this Court turns to whether the § 2744.02(B)(5) exception applies.

Section 2744.02(B)(5) allows for a political subdivision's immunity to be revoked through other sections of the Ohio Revised Code, so long as liability is "expressly imposed" by that other section. Ohio Rev. Code Ann. §2744.02(B)(5) (LexisNexis 1998). However, it cautions that "[l]iability shall not be construed to exist under another section of the Revised Code merely

11

because that section imposes a responsibility or mandatory duty upon a political subdivision . . . or because that section uses the term 'shall' in a provision pertaining to a political subdivision." *Id.* Plaintiff alleges that Defendants violated Ohio Revised Code § 2151.421, Ohio's child abuse reporting statute, and submits that they are thus divorced from their immunity by §2744.02(B)(5). (Resp. at 17, ECF No. 44).

In 1998, Ohio's child abuse reporting statute did not include an express provision of liability. *See generally* Ohio Rev. Code Ann. § 2151.421 (LexisNexis 1998). And though today the statute does include such an expressive provision, Ohio Rev. Code Ann. § 2151.421(N) (LexisNexis 2021), the Ohio Supreme Court has held that it does not apply retroactively.[3] *See Roe v. Planned Parenthood Sw. Ohio Region*, 912 N.E.2d 61 (Ohio 2009) (Syllabus at ¶ 2).[4] *Accord*, *McCoy v. Bd. of Educ.*, 515 Fed. App'x. 387, 395 (6th Cir. 2013) ("Section 2151.421 . . . does not expressly impose civil liability that fits within the parameters of section 2744.02(B)(5). The newly-added section . . . , which would otherwise allow for the imposition of civil liability, was enacted too late to apply to the facts of the present case.").

As such, none of the five exceptions apply to Plaintiff's claim for intentional infliction of emotional distress, and the Board is entitled to immunity from liability on Count III.

   c. **Count VI**

Plaintiff alleges that by violating Ohio's child abuse reporting statute, Ohio Revised Code § 2151.421, Defendants were negligent per se. (Compl. at 16–17, ECF No. 2). The Board is entitled

---

[3] The liability provision was first codified as provision (M) but is now codified as provision (N) and otherwise remains unchanged. *Compare* Ohio Rev. Code Ann. § 2151.421(M) (LexisNexis 2008) *with* Ohio Rev. Code Ann. § 2151.421(N) (LexisNexis 2021) (effective until March 31, 2021).
[4] Prior to 2012, the "syllabus of an opinion issued by the Supreme Court [was] the law of the case . . . ." *World Diamond v. Hyatt Corp.*, 699 N.E.2d 980, 985 (Ohio Ct. App. 1997). Since 2012, the syllabus and the rest of the opinion of the Ohio Supreme Court is the law of the case. Ohio S.Ct. Rep.Op.R. 2.2.

to immunity as set forth immediately above. *Supra* Part.IV.C.1.b. Therefore, judgment on the pleadings is proper on Count VI for the Board.

### 2. Political Subdivision Immunity and Principal Ball

Defendants assert that Counts III and V against Ball should be dismissed because she is entitled to immunity under Ohio Revised Code § 2744.03(A)(6). (Mot. at 14, ECF No. 41). Defendants are uncertain whether Plaintiff has sued Ball in her official capacity, individual capacity, or both, but argue that she is entitled to immunity in both capacities. (*Id.*). To the extent that the claims are directed against Ball in her official capacity, the analysis mirrors that which has already been applied to the claims against the Board. *See Lambert v. Clancy*, 927 N.E.2d 585, 591 (Ohio 2010) (suit against officials in their official capacity is viewed as a suit against the political subdivision, and the three tiered analysis applies). In her individual capacity, however, Ball is plausibly not entitled to immunity because Plaintiff has adequately pleaded that Ball acted with malice, bad faith, and/or in a wanton or reckless manner, eliminating her immunity.

When an employee is sued in her individual capacity courts do not apply the three-tiered analysis. *See id.* at 233–34. Instead the employee is "immune from liability" unless (a) the employee's acts or omissions were "manifestly outside the scope of the employee's employment or official responsibilities;" (b) the employee's acts or omissions were done "with malicious purpose, in bad faith, or in a wanton or reckless manner;" or (c) liability is "expressly imposed" upon the employee by another section of the Ohio Revised Code. Ohio Rev. Code Ann. § 2744.03(A)(6)(a)–(c) (LexisNexis 1998).

Plaintiff adequately pleads that Ball acted with malice, bad faith, and/or wantonly or recklessly. Viewed in the light most favorable to the Plaintiff, Ball knew that Bowman groomed and sexually abused Plaintiff. (Compl. at ¶¶ 6, 22, ECF No. 2). She took no action as an educator

13

in response to child abuse in her school. (*Id.* at ¶¶ 6, 24). Ball provides no countervailing authority that an educator does not behave wantonly or recklessly when she suspects child abuse is occurring but fails to act, or that an educator does not behave malicious by failing to intervene to stop child abuse when she knows it is happening. Thus, § 2744.03(A)(6)(b) plausibly applies and Ball is not entitled to immunity.

### 3. 42 U.S.C. § 1983

Plaintiff brings a 42 U.S.C. § 1983 claim that Defendants violated his right to due process and against sex-based discrimination. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileged, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. Essentially, Plaintiff must show (1) a deprivation of his rights, (2) by a person acting under color of law. *Id.*

As a preliminary matter, Defendants argue that these claims should be dismissed because Bowman was not employed by them during the summer of 1998, and thus could not have been acting under color of law. As already discussed, Plaintiff has adequately alleged that Bowman was employed by the Board that summer.

Defendants next proceed to separate arguments for the Board and for Ball.

#### a. Municipal Liability for the Board

Defendants submit that Plaintiff has not pleaded sufficient facts to support a finding of municipal liability under 42 U.S.C. § 1983. In this instance, the Court agrees.

Local governing bodies such as school boards are persons under § 1983, and as such they may be held liable for injuries inflicted as a result of their policies or customs. *Monell v. Dep't of*

*Social Servs.*, 436 U.S. 658, 669, 694 (1978). "A 'custom' for purposes of *Monell* liability must 'be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne County*, 103 F.3d 495, 506 (6th Cir. 1996) (quoting *Monell*, 436 at 691). In a child sex abuse case, a custom can be established through inaction, in which case the Plaintiff must establish:

(1) the existence of a clear and persistent pattern of sexual abuse by school employees;

(2) notice or constructive notice on the part of the School Board;

(3) the School Board's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and

(4) that the School Board's custom was the "moving force" or direct causal link in the constitutional deprivation.

*Id.* at 508 (citing *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989)).

Plaintiff fails to plead any factual allegations satisfying these four elements. Plaintiff asserts that the Board had "an official policy of inaction" and recites the four aforementioned elements nearly verbatim in his Complaint. (Compl. at ¶¶ 84–86, ECF No. 86). For example, he asserts that "[t]here was a clear and persistent pattern of sexual abuse by school employees." (*Id.* at ¶ 84). He also asserts that the Board "had a custom and/or practice of not investigating and/or hiding grooming behaviors of their employees . . . ." (*Id.* at ¶ 4). But in his Complaint Plaintiff fails to note any other instances of sexual abuse *and* that in response to these instances the Board took no action. These allegations are insufficient to demonstrate a pattern of inaction in response to child sexual abuse on the part of the Board.

### b. Qualified Immunity for Ball

Turning from the Board to Principal Ball, Defendants assert that Ball is entitled to qualified immunity in her official and individual capacities. (Mot. at 15, at ECF No. 41). A claim against

15

Ball in her official capacity is a claim against the municipality, meaning qualified immunity does not attach and the analysis above applies. *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 509 (6th Cir. 1996) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66). Thus, Plaintiff fails to state a claim against Ball in her official capacity. This leaves Plaintiff's claim against Ball in her individual capacity, specifically whether she is entitled to qualified immunity.

The Sixth Circuit has cautioned that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). *Accord, Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). That proposition applies equally to a motion for judgement on the pleadings. While entitlement to qualified immunity is "a threshold question to be resolved at the earliest point possible," *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003), "that point is usually summary judgement . . . ." *Wesley*, 779 F.3d at 433–34. At the pleadings stage, the burden is on Plaintiff to "alleg[e] facts making out a plausible claim that [Ball's] conduct violated a constitutional right that was clearly established at the time of the violation." *Gavitt v. Born*, 835 F.3d 623, 641 (6th Cir. 2016). Plaintiff has met that burden.

Plaintiff asserts that Ball and the other Defendants violated his right to be free from sexual abuse at the hands of public-school employees, which is a subset of the right to personal security and bodily integrity found within the substantive component of the Due Process Clause. *See Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 506 (6th Cir. 1996). Through his Complaint Plaintiff alleged that Ball knew of Bowman's grooming propensities and knew or should have known that Bowman was grooming Plaintiff, but "protected Bowman." (Compl. at ¶¶ 6, 18, 22). And, though Plaintiff includes this next allegation with two alternatives, he alleged that Defendants, including

16

Ball, knew that Bowman raped Plaintiff and "consented" to it. (*Id.* at ⁋ 22). At the pleading stage, the Court accepts these allegations as true.

Accepting the allegations as true, it is plausible that Ball's consent would mean that she took part in the violation of Plaintiff's clearly established constitutional rights. In this Circuit, it is settled that "a schoolchild's right to bodily integrity manifestly embraces the right to be free from sexual abuse at the hands of a public school employee." *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 506 (6th Cir. 1996). It bears repeating the words of the Sixth Circuit:

> To be sure, the magnitude of the liberty deprivation that sexual abuse inflicts upon the victim is an abuse of governmental power of the most fundamental sort; it is an unjustified intrusion that strips the very essence of personhood. If the "right to bodily integrity" means anything, it certainly encompasses the right not to be sexually assaulted under color of law. This conduct is so contrary to fundamental notions of liberty and so lacking of any redeeming social value, that no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the Due Process Clause.

*Id.* at 506–07. If Ball not only protected Bowman, but even consented to his raping of Plaintiff, Ball could be considered an active participant in the sexual abuse. Therefore, Plaintiff has sufficiently shown that Ball is plausibly not entitled to qualified immunity.

### D. Punitive Damages

In his prayer for relief Plaintiff has requested punitive damages on all Counts. Defendants assert that as a matter of law Plaintiff cannot recover punitive damages. (Mot. at 16, ECF No. 41). It appears from the diction and context that Defendants are making this argument for the Board. (*See id.* ("Defendant is clearly a political subdivision")). From the citations it further appears they are only making this argument with respect to the State law claims (Counts I, II, III, V, and VI) and the Due Process claim (Count VII). (*See id.*). The Due Process claim, as well as Count III and VI arising under State law, have now been dismissed against the Board.

Under Ohio law punitive damages "shall not be awarded" in an action against a political subdivision. Ohio Rev. Code Ann. § 2744.05(A) (LexisNexis 1998). Therefore, Plaintiff cannot recover punitive damages against the Board on the State law claims. The Court does not read Defendants' argument to extend beyond that, and thus will not address the applicability of punitive damages to the other claims.

## V.     Leave to Amend

Finally, Plaintiff has alternatively requested leave to amend his Complaint to "cure the alleged deficiencies and to clarify the allegations." (Resp. at 2, ECF No. 44). His request is insufficient as he did not attach a proposed amended complaint or elaborate upon how he would cure his Complaint. Rather, the request amounts to a "mere passing suggestion[.]" *Swanigan v. FCA US LLC*, 938 U.S. 779, 789–790 (6th Cir. 2019) (concluding that the district court did not abuse its discretion by denying plaintiff's "perfunctory" request to amend his complaint). The request is **DENIED**.

## VI.     Conclusion

For the reasons stated above, Defendants' Motion for Judgement on the Pleadings, (ECF No. 41), is **GRANTED in part** and **DENIED in part**. With respect to Columbus City Schools, the Motion is **GRANTED** and the claims against it are dismissed in the entirety. With respect to the Columbus Board of Education, the Motion is **GRANTED on Count III, VI, and VII only**. With respect to Cynthia Ball in her individual capacity, the Motion is **DENIED**. The Clerk is **DIRECTED** to terminate Columbus City Schools from this case.

**IT IS SO ORDERED.**

2/17/2021                                                 s/Edmund A. Sargus, Jr.
**DATE**                                                 **EDMUND A. SARGUS, JR.**
                                                           **UNITED STATES DISTRICT JUDGE**