UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHRISTOPHER NOBLE,

    Plaintiff,

    v.

THE YOUNG MEN'S CHRISTIAN
ASSOCIATION OF CENTRAL OHIO,
*et al.*,

    Defendants.

Case No. 2:19-cv-5094
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

**OPINION AND ORDER**

This matter arises on Defendant Young Men's Christian Academy of Central Ohio (the "YMCA") and John Bickley's (together with the YMCA, the "YMCA Defendants") Motion for Summary Judgment. (ECF No. 90.) For the reasons stated herein, the YMCA Defendants' motion is **GRANTED IN PART** and **DENIED AS MOOT IN PART**, (*id.*), and the remainder of this case will be remanded to the Franklin County Court of Common Pleas.

**I.**

In 1998, Plaintiff Christopher Noble, then an eight-year-old student at Fair Avenue Elementary School, attended a school-based summer program conducted by the YMCA known as the "YMCA Challenge 2000." At the time, the YMCA—which was then led by Bickley, its Chief Executive Officer—employed Defendant Ralph Bowman as a program director.

On June 24, 1998, Noble's group took a field trip to a nearby library. At some point before the event, Noble contends Bowman stopped him, took him to an apartment, and sexually abused him. Later that day, Noble reported the abuse to his parents, who then went to the police. Ultimately, Bowman was criminally indicted for the alleged event, but never convicted.

1

On October 17, 2019, Noble sued (1) the YMCA Defendants; (2) Bowman; (3) Bowman's Ohio-based company, Visions Unlimited Academy ("Visions Unlimited"); (4) the Columbus Board of Education (the "Board"); (5) Columbus City Schools (the "School District"); and (6) Cynthia Ball (the principal of Fair Avenue Elementary School in 1998) in the Franklin County Court of Common Pleas (collectively, "Defendants"). (ECF No. 2.) His claims included:

1. **Count I**: Rape, Gross Imposition, and Sexual Imposition and/or Attempt Pursuant to Ohio Rev. Code §§ 2907.02, 2907.05, and 2907.06 against all defendants;

2. **Count II**: Negligent Hiring, Retention, and Supervision against all defendants;

3. **Count III**: Infliction of Emotional Distress against all defendants;

4. **Count IV**: Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.* against the Board and the School District;

5. **Count V**: Negligence against all defendants;

6. **Count VI**: Negligence per se against all defendants;

7. **Count VII**: Violation of 42 U.S.C. § 1983 against "all [d]efendants who were acting under color of state law," pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (the "*Monell* Claim"); and

8. **Count VIII**: Nuisance against the YMCA and Bickley.

(*Id.*)

On November 19, 2019, Defendants, citing Noble's Title IX and *Monell* claims (collectively, Noble's "federal claims"), removed his complaint to this Court. (ECF No. 1.) In February 2021, this Court dismissed the School District as a defendant. (Op. & Order, ECF No. 49.) Roughly one year later, in April 2022, Noble voluntarily dismissed all claims against the Board and Ball with prejudice. (ECF No. 72.) That left the YMCA Defendants, Bowman, and Visions Unlimited as the only remaining defendants in this case.

2

## II.

Pending before the Court is the YMCA Defendant's Motion for Summary Judgment (the "Motion"), which asks this Court, for various reasons, to dismiss Noble's claims against them in full. (ECF No. 90.) With respect to Noble's federal claims, the YMCA Defendants argue that judgment in their favor is warranted, as there is no "genuine dispute" they were private (*i.e.*, non-state) actors during the relevant time period. Noble raises no argument to the contrary. Instead, he concedes he "never intended" to bring either his Title IX or *Monell* claims against the YMCA. (Pl.'s Resp., ECF No. 90.) And while Noble "fails to explicitly state that these counts against Bickley should also be dismissed, he does not otherwise address" the YMCA Defendant's arguments that Bickley—who Noble sued in his capacity as the YMCA's CEO—cannot be subject to liability under Title IX or § 1983.[1] (Def.'s Reply, ECF No. 103.) And even if Noble did counter those arguments, his would be unlikely to prevail. *See Freeman v. Helldoefer*, 208 F.3d 213, 2000 WL 125885, at *2 (6th Cir. Jan 28, 2000) (noting that the YMCA is a private entity); *Molina v. YMCA*, No. 08-cv-577, 2008 WL 789888, at *2 (E.D.N.Y. Mar. 21, 2008) ("To the extent that plaintiff alleges that he was mistreated by the YMCA or individual staff members, these claims must be dismissed because neither the organization nor its staff members are 'state actors.'").

Thus, insofar as Noble's Title IX and *Monell* claims are concerned, the YMCA Defendant's Motion is **GRANTED**. (ECF No. 90.)

---

[1] To that extent, Noble has essentially abandoned his federal claims insofar as they relate to Bickley. *See, e.g.*, *Clark v. City of Dublin*, 178 Fed. App'x 522, 524-25 (6th Cir. 2006) (affirming the district court's grant of summary judgment in an employment discrimination suit due to the plaintiff-appellant's failure to "properly respond to the arguments asserted under the [Age Discrimination in Employment Act] and [Americans with Disabilities Act]").

### III.

When Noble brought his federal claims in state court, he created an avenue for Defendants to remove his case to this Court on the basis of "federal question" jurisdiction. *See* 28 U.S.C. §§ 1331, 1441. Obviously, they took the opportunity. (ECF No. 1.) But at this point, the landscape of this case has changed. No longer do Noble's federal claims pertain to any public entities (*i.e.*, the School District and the Board) or officials (*i.e.*, Ball). The only defendants left for Noble to orient his federal claims around are Bowman and his company, Visions Unlimited. But that, for various reasons, cannot be.

For one, Noble's Title IX claim is narrowly cabined to the "School [District] and the Board." (*See* Complaint, ECF No. 2 at ¶¶ 54-64.) It does not, on its face, apply to Bowman or Visions Unlimited. Nor would it make any difference if the claim was pled to include them, given Title IX's baseline applicability to "educational institutions"—namely, public or private "preschool, elementary . . . secondary . . . or higher education" institutions. *See* 20 U.S.C. § 1681(c).

The same goes for Noble's *Monell* claim, which, generally speaking, could only be brought against (1) a municipality that (2) maintained an unconstitutional "policy or custom." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014); *accord Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996) ("Doe cannot base her claim against the County and the School Board solely on Davis's conduct, for *respondeat superior* is not available as a theory of recovery under section 1983. Rather she must show that the School Board *itself* is the wrongdoer.") (citation omitted); *Anderson v. Jones*, 440 F. Supp. 3d 819, 835 (S.D. Ohio 2020) (noting that it is "the [municipality's] *policy*"—rather than the "action" of its "agent"—which gives rise to a *Monell*

4

claim). As noted, here, there is no municipality left for Noble to hold liable under § 1983;[2] only two defendants who were not acting "under the color of state law" (or at all) during the relevant time period.[3]

### IV.

Thus far, no party has addressed this Court's subject-matter jurisdiction. But the Court, in light of the above, the Court takes up the matter on its own. *See, e.g., Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 598 (S.D. Ohio 2016) (noting that federal courts may, at any juncture, raise "sua sponte . . . the question of their own subject matter jurisdiction").

At this point, the only colorable claims left for this Court to adjudicate (specifically, Counts I-III, V, VI, and VIII) arise under Ohio law, and exclusively involve Ohio residents. In other words, there is no "diversity" jurisdiction, nor any federal question—"substantial" or otherwise—for this Court to decide. *See Gunn v. Minton*, 568 U.S. 251, 257-58 (2013). Thus, the inquiry becomes "whether to exercise supplemental jurisdiction over [Noble's] state-law claims pursuant to 28 U.S.C. §§ 1367 and 1441(c)" or to "remand the case to state court" under those same statutes. *Mencer v. Kraft Foods Global, Inc.*, 695 F. Supp. 2d 667, 672 (S.D. Ohio 2010); *see also McKinney v. City of Grosse Pointe Park*, 72 F. Supp. 2d 788, 790 (E.D. Mich. 1999) (noting that § 1441(c)

---

[2] True enough, "a suit against an official of the state" may, in certain instances, be treated as a "suit against the municipality." *See Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 509 (6th Cir. 1996) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). But here, the record unambiguously demonstrates that neither Bowman nor Visions Unlimited were acting as "official[s] of the state" during the relevant time period. *See infra*, n. 3; *Molina*, 2008 WL 789888, at *2.

[3] As Noble acknowledges, Bowman was "an employee of [the YMCA]" in June 1998. (Pl.'s Resp., ECF No. 98 at PageID #1914.) And by all accounts, that is the only capacity he acted in when he allegedly sexually abused Noble. *See* Deposition of Rebecca Ciminillo, ECF No. 82 at 9:10-18, 16:15-24 (noting that YMCA staff members like Bowman—even if employed by the School District during the school year—were solely employed by the YMCA during its "Challenge 2000" summer program); Deposition of Cynthia Ball, ECF No. 86 at 38:19-22 (same); Deposition of Ralph Bowman ("Bowman Dep."), ECF No. 87 at 19:19-22 (same). Moreover, the record reflects that Visions Unlimited was not involved with the "Challenge 2000" program. *See* Deposition of Christopher Noble, ECF No. 76 at 158:5-6 (noting the he had no recognition of Visions Unlimited); Deposition of Steven Hiller, ECF No. 85 at 45:1-4 (same); Bowman Dep. at 94:22-24 (noting that Visions Unlimited "did not start until after the Christopher Noble situation").

5

vests district courts with "the discretion to remand [an] entire civil action to state court when state law predominates," even when "federal question jurisdiction would have existed if the action were brought originally in federal court").

A district court's exercise of supplemental jurisdiction is a "doctrine of discretion, not of plaintiff's right." *Brown v. Scaglione*, No. 20-cv-10192, 2020 WL 674291, at *1 (E.D. Mich. Feb. 11, 2020) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Thus, under § 1367(c), a court may decline to exercise jurisdiction over any given "supplemental" state-law claim if it finds that:

> (i) the claim raises a novel or complex issue of State law,
>
> (ii) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (iii) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (iv) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

"In deciding whether to exercise supplemental jurisdiction . . . a judge must take into account concerns of comity, judicial economy, convenience, fairness, and the like." *Id.* at *1. Notably, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing" or remanding the claims to state court. *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *accord Oberer Land Devs. Ltd. v. Sugarcreek Twp.*, No. 21-3834, 2022 WL 1773722, at *6 (6th Cir. June 1, 2022) ("Out of comity to state courts, this circuit applies a 'strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed.'").

Again, here, there is no colorable federal question at issue. *See Shophar v. Gorski*, No. 17-13322, 2018 WL 4442271, at *2 (E.D. Mich. June 5, 2016) (noting that, in order for federal

6

question to lie under 28 U.S.C. § 1331, a plaintiff's claim must "colorabl[y]" arise "under the Constitution or laws of the United States"). And given this circuit's "strong presumption against the exercise of supplemental jurisdiction" in such instances, the Court is of the mind that Noble's remaining state-law claims—which largely hinge upon application of Ohio's *respondeat superior* doctrine—are better off dealt with by an Ohio court.[4] *Oberer*, 2022 WL 1773722, at *6; *see also Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 455 (6th Cir. 2021) ("Once a federal court no longer has federal claims to resolve, it 'should not ordinarily reach the plaintiff's state-law claims.'"). Thus, they will be remanded pursuant to §§ 1367(c) and 1441(c). *See Mencer*, 695 F. Supp. 2d at 672.

## V.

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART AS MOOT** the YMCA Defendants' Motion for Summary Judgment. (ECF No. 90.) To the extent they apply to the YMCA Defendants, Counts IV and VII of Noble's complaint are **DISMISSED WITH PREJUDICE**. The remainder of Noble's claims are **REMANDED** to the Franklin County Court of Common Pleas.

The case shall be remanded and closed on the docket of this Court.

**IT IS SO ORDERED.**

**8/16/2022**                                                s/Edmund A. Sargus, Jr.
**DATE**                                                               **EDMUND A. SARGUS, JR.**
                                                                                  **UNITED STATES DISTRICT JUDGE**

---

[4] To mind, the only factor that meaningfully weighs in favor of this Court's exercise supplemental jurisdiction is the fact the parties have reached the summary judgment stage. But that, absent more, is not enough to overcome its "strong presumption" against adjudicating issues of state law in the absence of any colorable federal claim. *Oberer*, 2022 WL 1773722, at *6; *see also Sanders v. City of Hodgenville*, 323 F. Supp. 3d 904, 916 (W.D. Ky. 2018) (noting that a district court's "discretion to decline supplemental jurisdiction over state-law claims extends to all stages of litigation, including summary judgment").